# EXHIBIT 5

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7000 Security Boulevard, Mail Stop 02-02-38
Baltimore, Maryland 21244-1850



## Center for Medicaid, CHIP, and Survey & Certification/Survey & Certification Group

**Ref: S&C: 11-32- Hospital/CAH**

**DATE:**      **July 15, 2011**

**TO:**         State Survey Agency Directors

**FROM:**      Director
              Survey and Certification Group

**SUBJECT:**   Telemedicine Services in Hospitals and Critical Access Hospitals (CAHs)

---

### Memorandum Summary

- *Telemedicine Rules Adopted for Hospitals/CAHs:*  New and amended rules effective July 5, 2011 permit hospitals and CAHs to provide telemedicine services to their patients through written agreements with a distant-site hospital or a distant-site telemedicine entity

- *Streamlined Credentialing & Privileging for Telemedicine Physicians & Practitioners.* Hospitals and CAHs may rely, when granting telemedicine privileges, upon the privileging decisions of a distant-site hospital or telemedicine entity with which they have a written agreement that meets Medicare requirements.

---

On May 5, 2011, the Centers for Medicare & Medicaid Services (CMS) published a final rule (76 FR 25550), effective July 5, 2011, governing the agreements under which a hospital or CAH may provide telemedicine services to its patients.  "Telemedicine," as the term is used in this rule, means the provision of clinical services to patients by physicians and practitioners from a distance via electronic communications.  The distant-site telemedicine physician or practitioner provides clinical services to the hospital or CAH patient either simultaneously, for example, as in teleICU services, or non-simultaneously, as is the case with many teleradiology services.

Under the new and revised hospital and CAH regulations, located at 42 CFR. Part 482 and Part 485, Subpart F respectively, telemedicine services must be provided under a written agreement between the hospital or CAH and one or more:

- Distant-site hospitals that participate in Medicare; or
- Distant-site telemedicine entities. For the purposes of this rule, a distant-site telemedicine entity is defined as an entity that -- (1) provides telemedicine services; (2) is not a Medicare-participating hospital; and (3) provides contracted services in a manner that enables a hospital or CAH using its services to meet all applicable Conditions of Participation (CoPs), particularly those requirements related to the credentialing and privileging of practitioners providing telemedicine services to the patients of the hospital or CAH.

Page 2 – State Survey Directors

The written agreement must contain provisions requiring  the distant-site hospital or telemedicine entity to use a credentialing and privileging process that at least meets the Medicare standards that hospitals  have traditionally been required to use (found at 42 CFR 482.12(a) and 42 CFR 482.22(a)).  The written agreement must also ensure that the distant-site hospital or telemedicine entity has granted privileges to the individual telemedicine physicians and practitioners providing telemedicine services to hospital/CAH patients, and that the distant-site telemedicine physicians or practitioners hold a license issued or recognized by the State where the hospital or CAH is located.  The distant-site hospital or telemedicine entity must provide a list of telemedicine physicians and practitioners who are privileged there and their current privileges at the distant-site hospital or entity to the hospital or CAH.  In the case of an agreement with a distant-site telemedicine entity, the agreement must also state that the entity is a contractor of services to the hospital or CAH which furnishes contracted telemedicine services in a manner that permits the hospital or CAH to comply with all applicable CoPs.  The hospital or CAH must, under the terms of the agreement, review the services provided to its patients by telemedicine physicians and practitioners covered by the agreement and provide written feedback to the distant-site hospital or telemedicine entity, addressing, at a minimum, all adverse events or complaints related to the telemedicine services provided at the hospital or CAH.

In addition, under the revised CAH regulations at 42 CFR 485.616(c)(1), an exception is made in the case of telemedicine services to the requirement that CAH agreements for clinical services may only be with a Medicare-participating provider or supplier, since telemedicine entities do not participate as such in Medicare.  Further, under revised 42 CFR 485.641(b), concerning outside quality assurance reviews of care provided in the CAH by Medical Doctors and Doctors of Osteopathy (MDs/Dos), the distant-site hospital would be the outside entity conducting such reviews of distant-site telemedicine MDs/DOs providing telemedicine services to the CAH's patients under written agreement.

An advance copy of the revised guidance in State Operations Manual Appendix A (hospitals) and Appendix W (CAHs) is attached to this memorandum.  The final version will be issued at a later date and may vary slightly from this advance copy.

**Effective Date:**  Immediately.  This policy should be communicated to all survey and certification staff, their managers and the State/Regional Office training coordinators within 30 days of this memorandum.

**Training:**  This policy should be shared with all survey and certification staff and their managers.


/s/
Thomas E. Hamilton

Attachment


cc:  Survey and Certification Regional Office Management

| CMS Manual System | Department of Health & Human Services (DHHS) |
|---|---|
| **Pub. 100-07 State Operations Provider Certification** | **Centers for Medicare & Medicaid Services (CMS)** |

| Transmittal | (Advance Copy) | Date: |
|---|---|---|

**SUBJECT:  Revised Appendix A, Interpretive Guidelines for Hospitals, and Revised Appendix W, Interpretive Guidelines for Critical Access Hospitals (CAHs)**

**I.  SUMMARY OF CHANGES:  New guidance is provided to reflect regulatory changes concerning the provision of telemedicine services in Hospitals and CAHs.**

**NEW/REVISED MATERIAL -**       **EFFECTIVE DATE\*: Upon Issuance**
                                 **IMPLEMENTATION DATE: Upon Issuance**

*The revision date and transmittal number apply to the red italicized material only.  Any other material was previously published and remains unchanged.*

**II.  CHANGES IN MANUAL INSTRUCTIONS: (*N/A if manual not updated.*)**
   **(R = REVISED, N = NEW, D = DELETED) – (*Only One Per Row.*)**

| R/N/D | CHAPTER/SECTION/SUBSECTION/TITLE |
|---|---|
| R | Appendix A/§482.12(a) Standard:  Medical Staff |
| R | Appendix A/§482.22(a) Standard:  Composition of the Medical Staff |
| R | Appendix A/§482.22(c)  Standard:  Medical Staff Bylaws |
| N | Appendix W/§485.616(c) Standard:  Agreements for Credentialing and Privileging of Telemedicine Physicians and Practitioners |
| R | Appendix W/§485.635(c) Standard:  Services Provided through Agreements or Arrangements |
| R | Appendix W/§485.641(b) Standard:  Quality Assurance |

**III.  FUNDING:  No additional funding will be provided by CMS; contractor activities are to be carried out within their FY 2011 operating budgets.**

**IV.  ATTACHMENTS:**

| | |
|---|---|
| | Business Requirements |
| X | Manual Instruction |
| | Confidential Requirements |
| | One-Time Notification |
| | Recurring Update Notification |

# State Operations Manual
## Appendix W - Survey Protocol, Regulations and Interpretive Guidelines for Critical Access Hospitals (CAHs) and Swing-Beds in CAHs

*(Rev. )*

\* \* \*

*C-0196*

**[§485.616 Condition of Participation:  Agreements]**

*(c)  Standard:  Agreements for credentialing and privileging of telemedicine physicians and practitioners.*

*(1)  The governing body of the CAH must ensure that, when telemedicine services are furnished to the CAH's patients through an agreement with a distant-site hospital, the agreement is written and specifies that it is the responsibility of the governing body of the distant-site hospital to meet the following requirements with regard to its physicians or practitioners providing telemedicine services:*
*(i)  Determine, in accordance with State law, which categories of practitioners are eligible candidates for appointment to the medical staff.*
*(ii)  Appoint members of the medical staff after considering the recommendations of the existing members of the medical staff.*
*(iii)  Assure that the medical staff has bylaws.*
*(iv) Approve medical staff bylaws and other medical staff rules and regulations.*
*(v)  Ensure that the medical staff is accountable to the governing body for the quality of care provided to patients.*
*(vi) Ensure the criteria for selection are individual character, competence, training, experience, and judgment.*
*(vii)  Ensure that under no circumstances is the accordance of staff membership or professional privileges in the hospital dependent solely upon certification, fellowship or membership in a specialty body or society.*

*(2)  When telemedicine services are furnished to the CAH's patients through an agreement with a distant-site hospital, the CAH's governing body or responsible individual may choose to rely upon the credentialing and privileging decisions made by the governing body of the distant-site hospital regarding individual distant-site physicians or practitioners.*

*The CAH's governing body or responsible individual must ensure, through its written agreement with the distant-site hospital, that the following provisions are met:*

*(i)  The distant-site hospital providing telemedicine services is a Medicare-participating hospital.*

*(ii)  The individual distant-site physician or practitioner is privileged at the distant-site hospital providing the telemedicine services, which provides a current list of the distant-site physician's or practitioner's privileges;*

*(iii)  The individual distant-site physician or practitioner holds a license issued or recognized by the State in which the CAH is located; and*

*(iv)  With respect to a distant-site physician or practitioner, who holds current privileges at the CAH whose patients are receiving the telemedicine services, the CAH has evidence of an internal review of the distant-site physician's or practitioner's performance of these privileges and sends the distant-site hospital such information for use in the periodic appraisal of the individual distant-site physician or practitioner.  At a minimum, this information must include all adverse events that result from the telemedicine services provided by the distant-site physician or practitioner to the CAH's patients and all complaints the CAH has received about the distant-site physician or practitioner.*

*Interpretive Guidelines §485.616(c)*

*"Telemedicine," as the term is used in this regulation, means the provision of clinical services to patients by physicians and practitioners from a distance via electronic communications.  The distant-site telemedicine physician or practitioner provides clinical services to the CAH patient either simultaneously, as is often the case with teleICU services, for example, or non-simultaneously, as may be the case with many teleradiology services.  "Simultaneously" means that the clinical services (for example, assessment of the patient with a clinical plan for treatment, including any medical orders needed) are provided to the patient in "real time" by the telemedicine physician or practitioner, similar to the actions of an on-site practitioner when called in by a patient's attending physician to see the patient.   "Non-simultaneously" means that, while the telemedicine physician or practitioner still provides clinical services to the patient, such services may involve after-the-fact interpretation of diagnostic tests in order to provide an assessment of the patient's condition and do not necessarily require the telemedicine practitioner to directly assess the patient in "real time."  This would be similar to the services provided by an on-site radiologist who interprets a patient's x-ray or CT scan and then communicates his or her assessment to the patient's attending physician who then bases his or her diagnosis and treatment plan on these findings.  . (See 76 FR 25552, May 5, 2011)*

*A CAH may make arrangements with a distant-site Medicare-participating hospital for the provision of telemedicine services to the CAH's patients by physicians or practitioners granted privileges by the distant-site hospital.*

*If a CAH enters into an agreement for telemedicine services with a distant-site hospital, the agreement must be in writing.  Furthermore, the written agreement must specify that it is the responsibility of the distant-site hospital to conduct its credentialing and privileging process for those of its physicians and practitioners providing telemedicine services such that the distant-site hospital:*

- *Determines, in accordance with State law, which categories of practitioners are eligible candidates for privileges or membership on the distant-site hospital's medical staff.*
- *Appoints members and grants medical staff privileges after considering the recommendations of the existing members of the distant-site hospital's medical staff.*
- *Assures that the distant-site hospital's medical staff has bylaws.*
- *Approves the distant-site hospital's medical staff bylaws and other medical staff rules and regulations.*
- *Ensures that the medical staff is accountable to the distant-site hospital's governing body for the quality of care provided to patients.*
- *Ensures the criteria for granting medical staff membership/privileges to an individual are the individual's character, competence, training, experience, and judgment.*
- *Ensures that under no circumstances is the accordance of distant-site hospital medical staff membership or privileges dependent solely upon certification, fellowship or membership in a specialty body or society.*

*Since the distant-site hospital must also participate in Medicare, it has an independent obligation to comply with these same requirements for all of its medical staff under §§482.12(a)(1) through (a) (7).  Nevertheless, the written telemedicine services agreement between the CAH and the distant-site hospital must explicitly include a provision addressing the distant-site hospital's obligation to comply with these provisions.*

*The CAH's governing body (or the individual responsible for the CAH if it has no governing body) has the option, when considering granting privileges to telemedicine physicians and practitioners, to rely upon the credentialing and privileging decisions of the distant-site hospital for these physicians and practitioners.  In order to exercise this alternative credentialing and privileging option, the CAH's governing body must ensure that its written agreement with the distant-site hospital addresses all of the following:*

- *That the distant-site hospital participates in the Medicare program.  If the distant-site hospital's participation in Medicare is terminated, either voluntarily or involuntarily, at any time during the agreement, then as of the effective date of the termination, the CAH may no longer receive telemedicine services under the agreement;*

- *That the distant-site hospital provides a list to the CAH of all its physicians and practitioners covered by the agreement, including their privileges at the distant-site hospital.  The list may not include any physician or practitioner who does not hold privileges at the distant-site hospital.  The list must be current, so the agreement must address how the distant-site hospital will keep the list current;*

- *That each physician or practitioner who provides telemedicine services to the CAH's patients under the agreement holds a license issued or recognized by the State where the CAH is located.  States may have varying requirements as to whether they will recognize an out-of-state license for purposes of practicing within their State, and they may also vary as to whether they establish different standards for telemedicine services.  The licensure*

*requirements governing in the State where the CAH whose patients are receiving the telemedicine services is located must be satisfied, whatever they may be; and*

- *That the CAH has evidence that it reviews the telemedicine services provided to its patients and provides feedback based on this review to the distant-site hospital for the latter's use in its periodic appraisal of each physician and practitioner providing telemedicine services under the agreement.  At a minimum, the CAH must review and send information to the distant-site hospital on all adverse events that result from a physician or practitioner's provision of telemedicine services and on all complaints the CAH has received about a telemedicine physician or practitioner.*

*If the CAH's governing body or responsible individual does not rely on the privileging decisions of the distant-site hospital, then it must for each physician or practitioner providing telemedicine services under an agreement follow the CAH's standard process for review of credentials and granting of privileges to physicians and practitioners.*

***Survey Procedures §485.616(c)(1) & (2)***

- *Ask  the CAH's leadership whether it uses telemedicine services.  If yes,*

  - *Ask to see a copy of the written agreement(s) with the distant-site hospital(s).   Does each agreement include the required elements concerning credentialing and privileging of the telemedicine physicians and practitioners by the distant-site hospital?*

  - *Does the CAH have documentation indicating that it granted privileges to each telemedicine physician and practitioner?*

  - *Does the documentation indicate that the CAH's governing body or responsible individual made the privileging decision based on the privileging decisions of the distant-site hospital?  If yes:*

    - *Does the agreement address the required elements concerning the distant-site hospital's Medicare participation, appropriate licensure of telemedicine physicians and practitioners, current list of telemedicine physicians and practitioners with privileges, and review by the CAH of the telemedicine physicians' and practitioners' services?*

    - *Ask to see the list provided by the distant-site hospital of the telemedicine physicians and practitioners, including their privileges and pertinent licensure information.*

    - *Ask for evidence that the CAH conducts the required review of the telemedicine services provided by the telemedicine physicians and practitioners, including any associated adverse events and complaints, and that it provides the required feedback to the distant-site hospital.*

_____

*C-0197*

*[(c)  Standard:  Agreements for credentialing and privileging of telemedicine physicians and practitioners.]*

*(3)  The governing body of the CAH must ensure that when telemedicine services are furnished to the CAH's patients through an agreement with a distant-site telemedicine entity, the agreement is written and specifies that the distant-site telemedicine entity is a contractor of services to the CAH and as such, in accordance with §485.635(c)(4)(ii), furnishes the contracted services in a manner that enables the CAH to comply with all applicable conditions of participation for the contracted services, including, but not limited to, the requirements in this section with regard to its physicians and practitioners providing telemedicine services.*

*(4)  When telemedicine services are furnished to the CAH's patients through an agreement with a distant-site telemedicine entity, the CAH's governing body or responsible individual may choose to rely upon the credentialing and privileging decisions made by the governing body of the distant-site telemedicine entity regarding individual distant-site physicians or practitioners.  The CAH's governing body or responsible individual must ensure, through its written agreement with the distant-site telemedicine entity, that the following provisions are met:*

*(i)      The distant-site telemedicine entity's medical staff credentialing and privileging process and standards at least meet the standards at (c)(1)(i) through (c)(1)(vii).*

*(ii)      The individual distant-site physician or practitioner is privileged at the distant-site telemedicine entity providing the telemedicine services, which provides a current list to the CAH of the distant-site physician's or practitioner's privileges at the distant-site telemedicine entity.*

*(iii)      The individual distant-site physician or practitioner holds a license issued or recognized by the State in which the CAH whose patients are receiving the telemedicine services is located.*

*(iv)      With respect to a distant-site physician or practitioner, who holds current privileges at the CAH whose patients are receiving the telemedicine services, the CAH has evidence of an internal review of the distant-site physician's or practitioner's performance of these privileges and sends the distant-site telemedicine entity such information for use in periodic appraisal of the distant-site physician or practitioner.  At a minimum, this information must include all adverse events that result from the telemedicine services provided by the distant-site physician or practitioner to the CAH's patients and all complaints the CAH has received about the distant-site physician or practitioner.*

*Interpretive Guidelines §485.616(c)(3) & (4)*

*For the purposes of this rule, a distant-site telemedicine entity is defined as an entity that -- (1) provides telemedicine services; (2) is not a Medicare-participating hospital; and (3) provides contracted services in a manner that enables a CAH using its services to meet all applicable CoPs, particularly those requirements related to the credentialing and privileging of physicians and practitioners providing telemedicine services to the patients of a CAH.  A distant-site*

*telemedicine entity would include a distant-site hospital that does not participate in the Medicare program that is providing telemedicine services to a Medicare-participating CAH.  (See 76 FR 25553, May 5, 2011)*

*A CAH may have an agreement with a distant-site telemedicine entity for the provision of telemedicine services to the CAH's patients by physicians or practitioners granted privileges by the distant-site telemedicine entity.*

*If a CAH enters into an agreement for telemedicine services with a distant-site telemedicine entity, the agreement must be in writing.  Furthermore, the written agreement must specify that under the agreement the distant-site telemedicine entity is a contractor providing services to the CAH, and that, in accordance with the requirements of §485.635(c)(4)(ii), the distant-site telemedicine entity furnishes its telemedicine services in a manner that enables the CAH to comply with all applicable CAH Conditions of Participation (CoPs), including, but not limited to, the specific requirements governing telemedicine services.  Under §485.635(c)(4)(ii,) the CAH's governing body or responsible individual is obligated to ensure that all contractors of services furnish those services in a manner that enables the CAH to comply with all applicable CoPs.*

*The CAH's governing body (or the individual responsible for the CAH if it has no governing body) has the option, when considering granting privileges to telemedicine physicians and practitioners, to rely upon the credentialing and privileging decisions of the distant-site telemedicine entity for these physicians and practitioners.  In order to exercise this alternative credentialing and privileging option, the CAH's governing body must ensure through its written agreement with the distant-site telemedicine entity that all of the following requirements are included in the agreement and that the contractor fulfills these requirements:*

- *The distant-site telemedicine entity's medical staff credentialing and privileging process and standards at least meets the standards at §485.616(c)(1)(i) through (c)(1)(vii).  In other words, the distant-site telemedicine entity must at a minimum:*

  - *Determine, in accordance with State law, which categories of practitioners are eligible candidates for medical staff privileges or membership at the telemedicine entity;*
  - *Appoint members and grant medical staff privileges after considering the recommendations of the existing members of its medical staff;*
  - *Assure that its medical staff has bylaws;*
  - *Approve its medical staff's bylaws and other medical staff rules and regulations;*
  - *Ensure that the medical staff is accountable to the distant-site telemedicine entity's governing body for the quality of care provided to patients;*
  - *Ensure the criteria for granting distant-site telemedicine medical staff membership/privileges to an individual are the individual's character, competence, training, experience, and judgment; and*
  - *Ensure that under no circumstances is the accordance of medical staff membership or privileges dependent solely upon certification, fellowship or membership in a specialty body or society.*

- *The distant-site telemedicine entity provides to the CAH a list of all its physicians and practitioners covered by the agreement, including their privileges at the distant-site telemedicine entity.  The list may not include any physician or practitioner who does not hold privileges at the distant-site telemedicine entity.  The list must be current, so the agreement must address how the distant-site telemedicine entity will keep the list current;*

- *Each physician or practitioner who provides telemedicine services to the CAH's patients under the agreement holds a license issued or recognized by the State where the CAH is located.  States may have varying requirements as to whether they will recognize an out-of-state license for purposes of practicing within their State, and they may also vary as to whether they establish different standards for telemedicine services.  The licensure requirements governing in the State where the hospital whose patients are receiving the telemedicine services is located must be satisfied, whatever they may be; and*

- *The CAH reviews the performance of the physicians and practitioners providing telemedicine services to its patients and provides a written review to the distant-site telemedicine entity for the latter's use in its periodic appraisal of each physician and practitioner providing telemedicine services under the agreement.  At a minimum, the CAH must review and send information to the distant-site telemedicine entity on all adverse events that result from a physician's or practitioner's provision of telemedicine services and on all complaints the CAH has received about a telemedicine physician or practitioner.*

*If the CAH's governing body or responsible individual does not rely on the privileging decisions of the distant-site telemedicine entity, then it must for each practitioner providing telemedicine services under an agreement follow the CAH's standard process for review of credentials and granting of privileges to physicians and practitioners.*

**Survey Procedures §485.616(c)(3) & (4)**

- *Ask the CAH's leadership whether it uses telemedicine services.  If yes,*

  - *Ask to see a copy of the written agreement(s) with the distant-site telemedicine entity(ies).  Does each agreement explicitly state that the distant-site telemedicine entity will provide telemedicine services in a manner that enables the CAH to comply with all applicable CoPs?*

  - *Does the CAH have documentation indicating that it granted privileges to each telemedicine physician and practitioner?*

  - *Does the documentation indicate that the CAH's governing body or responsible individual made the privileging decision based on the privileging decisions of the distant-site telemedicine entity?  If yes:*

    - *Does the written agreement with the distant-site telemedicine entity address the required elements concerning the distant-site telemedicine entity's utilization of a medical staff credentialing and privileging process that meets the requirements of the*

*hospital CoPs, licensure of telemedicine physicians and practitioners, current list of telemedicine physicians and practitioners with privileges at the distant-site telemedicine entity, and written review by the CAH of the telemedicine physicians' and practitioners' services?*

- *Is there a list provided by the distant-site telemedicine entity of the telemedicine physicians and practitioners covered by the agreement, including their privileges and pertinent licensure information?*

- *Is there evidence that the CAH reviews the services provided by the telemedicine physicians and practitioners, including any adverse events and complaints, and provides written feedback to the distant-site telemedicine entity?*

- *Ask the CAH how it verifies that the telemedicine entity fulfills the terms of the agreement with respect to its credentialing and privileging process and otherwise assures that services are provided in a manner that enables the CAH to meet all applicable CAH requirements? (Surveyors do not attempt to independently verify whether or not the distant-site telemedicine entity's credentialing and privileging process fulfills the regulatory requirements. Surveyors focus only on what actions the CAH takes to ensure that the distant-site telemedicine entity complies with the terms of the agreement.)*

**\* \* \***

## C-0285

### §485.635(c)  Standard: Services Provided Through Agreements or Arrangements

**(1) The CAH has agreements or arrangements (as appropriate) with one or more providers or suppliers participating under Medicare to furnish other services to its patients, including--**

***(5) In the case of distant-site physicians and practitioners providing telemedicine services to the CAH's patients under a written agreement between the CAH and a distant-site telemedicine entity, the distant-site telemedicine entity is not required to be a Medicare-participating provider or supplier.***

**Interpretive Guidelines §485.635(c)(1)** ***& (c)(5)***

*All agreements for providing health care services to the CAH's patients  must be with a provider or supplier that participates in the Medicare program, except in the case of an agreement with a distant-site telemedicine entity for the provision of telemedicine services.*  The *agreements* should describe routine procedures (e.g., for obtaining outside laboratory tests); and there should be evidence in the agreement or arrangement that the governing body (or responsible individual)